# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIAMOND STATE INSURANCE COMPANY

       Plaintiff,

   v.

BRENT DUKE, et al.,

       Defendants.

No. 14 CV 7764

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

Brent Duke and 21 Century Smoking, Inc. found themselves defending a lawsuit against DR Distributors, LLC, CB Distributors, Inc., and Carlos Bengoa. 21 Century notified its insurer, Diamond State Insurance Company, who began paying 21 Century's defense costs under a reservation of rights. Diamond State filed this declaratory judgment action seeking a ruling that the underlying lawsuit is neither covered nor potentially covered by 21 Century's policy with Diamond State, and that it is entitled to a reimbursement of its defense costs. 21 Century filed a counterclaim, contending that Diamond State is obligated to both continue paying for its defense and indemnify 21 Century. Its reasons are that Diamond State either waived its rights to or is estopped from asserting policy defenses, and the underlying lawsuit is at least potentially covered by multiple policies. 21 Century also argues that the policy's provision establishing a right to reimbursement should not be enforced. Both parties bring cross-motions for summary judgment, which overlap in many areas. 21 Century further seeks in its cross-motion sanctions

against Diamond State for its conduct in this action, and a declaration that Diamond State breached its duty to defend.

For the following reasons, Diamond State's motion is denied and 21 Century's motion is granted in part and denied in part.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the material facts are not in dispute, the existence and interpretation of a contract are questions of law that the court may decide on a motion for summary judgment." *Citadel Group v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012). A court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). And on cross-motions for summary judgment, a court must draw inferences "in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008).

## II.    Background

### A.    The Policy

21 Century, an e-cigarette vendor, is insured by Diamond State as part of a risk purchasing group. [36] ¶¶ 24–25.[1] Diamond State provides insurance to this risk purchasing group through three contractual agreements, titled ART 002, ART 003, and ART 006, which have one-year effective periods starting June 1 of the years 2009, 2010, and 2011, respectively. [40] ¶¶ 3–5. The relevant terms of these agreements are identical. [40] ¶ 6. The risk purchasing group, in turn, issued Subscribing Membership Certificates, or Certificates of Insurance, to 21 Century, and these certificates refer to the agreements between Diamond State and the risk purchasing group. [36] ¶ 25.

Per the insurance agreements, Diamond State must "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." [36] ¶ 26. It has the "right and duty to defend the insured against any 'suit' seeking those damages," but it has "no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." *Id.* The insurance applies to any injury "arising out of . . . [o]ral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products, or services," as well as any injury arising out of slogan infringement, among other

---

[1] Bracketed numbers refer to entries on the district court docket. The facts are largely taken from 21 Century's response to Diamond State's LR 56.1 statement [36], Diamond State's response to 21 Century's LR 56.1 statement [40], and a review of the record submitted by the parties.

offenses. [36] ¶ 27. But two notable exclusions from coverage apply: 1) injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights"; and 2) injury "arising out of the unauthorized use of another's name or product in your email address, domain name or metatag, or any other similar tactics to mislead another's potential customers." [36] ¶ 28. As an exception to the first exclusion, injury arising from infringement of another's slogan is still covered by the insurance. *Id.*

21 Century's insurance coverage is subject to a defense cost reimbursement provision, which allows for Diamond State's recovery of any money it spends on an insured's defense, under certain conditions, if it later determines that the underlying claim is not covered. [36] ¶ 29.

## B.    The Underlying Action

On May 1, 2013, DR Distributors, LLC, a company that distributes e-cigarettes under the trademark "21ST CENTURY SMOKE," filed an amended complaint in an action against 21 Century. [36] ¶ 6. The complaint presented four causes of action: 1) Federal Trademark Counterfeiting and Infringement Pursuant to Lanham Act §§ 32, 34 (15 U.S.C. §§ 1114, 1116); 2) Federal Unfair Competition and False Designation of Origin Pursuant to Lanham Act § 43(s) (15 U.S.C. § 1125(a)); 3) Common Law Unfair Competition; and 4) Illinois Deceptive Trade Practices Act (815 ILCS 510/2). [36] ¶ 7. 21 Century counterclaimed against the original plaintiff and two related parties; they then filed counterclaims of their own

that were substantially similar to the claims alleged by DR Distributors, LLC. [36] ¶¶ 8, 9.

On August 30, 2013, 21 Century sent the underlying complaint and counterclaim to Diamond State, seeking defense and indemnification, and Diamond State responded with a letter acknowledging receipt, reserving its rights to contest coverage, and requesting additional information (including which certificates 21 Century was relying upon in seeking a defense). [36] ¶¶ 30–31; [29-4] at 2. In a letter dated December 16, 2013, Diamond State agreed to pay for 21 Century's defense, using 21 Century's independent legal counsel, under a reservation of rights. [36] ¶¶ 32–36; [40] ¶ 20. It also requested more information, including pleadings, motions, discovery requests and responses, and litigation strategy reports. [40] ¶ 21; [29-6] at 6. Diamond State sent another letter on February 4, 2014, reiterating its request for information, which 21 Century later provided. [40] ¶¶ 25–26. The action proceeded, and on August 25, 2014, counsel for Diamond State attended a settlement conference between 21 Century and DR Distributors. [40] ¶37. On October 6, 2014, Diamond State filed this declaratory judgment action seeking a determination of its defense and indemnification obligations and reimbursement of the roughly $700,000 it has paid in support of 21 Century's defense. [40] ¶ 31. To date, none of the claims in the underlying action has been dismissed.

## III.    Analysis

### A.    The Operative Policy

At the outset, the parties dispute which insurance agreement is at issue in this action. 21 Century argues that it is covered by Diamond State under three distinct policies: ART 002, ART 003, and ART 006. It further contends that, because it provided notice to Diamond State of the underlying lawsuit, any obligation Diamond State may have to defend 21 Century finds its source in all three policies. And because Diamond State's subsequent correspondence explicitly referenced only ART 006 and not the other two policies, 21 Century believes Diamond State waived its right to and is estopped from asserting policy defenses under ART 002 and ART 003. Diamond State disputes 21 Century's description of the three policies, insisting instead that they act as a single "continuous run policy." [40] ¶ 6. And it insists that 21 Century tendered the underlying action under only the ART 006 policy, and that Diamond State agreed to defend under the same. [39] at 11. Both parties agree, however, that the terms in ART 002, ART 003, and ART 006 that are relevant to this action are identical. [40] ¶ 7.

Group insurance policies, like the one (or ones) at issue are not new. They are "issued by insurance companies to a group policyholder, such as an employer, association or union. A certificate is then issued to participating insureds. The master policy is the primary contract under Illinois law and must first be looked to in construing group insurance policies." *Cook ex rel. Cook. v. AAA Life Ins. Co.*, 2014 IL App (1st) 123700, ¶ 50, *appeal denied sub nom. Cook v. AAA Life Ins. Co.*, 20 N.E.3d 1252 (Ill. 2014) (citations omitted). Identical language in each of ART 002,

ART 003, ART 006 provides that a "subscribing member" of the American Retail Association, the group that purchased the policy, is the "Named Insured under each individual 'Subscribing Member's Certificate.'" [29-3] at 25. And each Subscribing Member's Certificate, also referred to by the parties as a Certificate of Insurance, is subject to the following: "The terms, conditions and exclusions apply to each subscribing member separately"; and "[e]ach 'Subscribing Member's Certificate' will have a separate coverage period as stated in the 'Subscribing Member's Certificate.'" *Id.*

To the extent Diamond State is under any obligations with respect to the underlying action, its obligations are not limited to any particular insurance contract. It is true that 21 Century specifically identified only ART 006 in its August 30, 2013 letter to Diamond State. Its attorney knew of no other active policies at the time. [37-7] at 2. But in addition to the August 30, 2013 letter, Diamond State received copies of 52 certificates naming 21 Century as the insured, some of which referred to ART 002, some of which referred to ART 003, and some of which referred to ART 006. [40] ¶ 19; [37-6] at 2–53. Diamond State's argument that 21 Century identified in its letter only ART 006 is irrelevant because "the insurer is usually in a better position than even a sophisticated insured to know the scope of the insurance contract and its duties under it." *Cincinnati Companies v. W. Am. Ins. Co.*, 183 Ill.2d 317, 328 (1998). Actual notice of a claim, not tender, is sufficient to trigger the duty to defend. *Id.* 21 Century provided Diamond State with actual notice of the underlying action and the certificates identifying three different

insurance contracts. And while it identified in its letter only ART 006, 21 Century did not expressly decline coverage under ART 002 and ART 003. All three contracts are at issue in this action.

However, 21 Century's argument that Diamond State somehow waived its rights to contest coverage, or is estopped from contesting coverage, under only ART 002 and ART 003 fails. Diamond State's December 16, 2013 letter reserving its rights does refer to ART 006, but it explicitly identifies the exclusions that might preclude coverage, which are identical under each contract, and states that Diamond State "reserves the right to file a declaratory judgment action to seek a determination of its obligations with respect to the defense and/or indemnification of the Suit." [29-6] at 5. That reservation is certainly limited to the underlying action, but is not limited to any particular policy. It would make no sense to hold that Diamond State reserved its rights to contest coverage pursuant to policy exclusions under one contract, but not under two other contracts with identical terms. It is equally far-fetched to suggest that Diamond State should be estopped from asserting coverage defenses under ART 002 and ART 003 simply because they were not named in the parties' correspondence. As explained further below, 21 Century's waiver and estoppel arguments fail with respect to any of the insurance contracts at issue.

21 Century also requests in its cross-motion for summary judgment, for the first time, a declaration that Diamond State "admitted and/or breached its duty to defend under policy ART 006" and "breached its duty to defend under policies ART

002 and ART 003." [34] at 2. But it is undisputed that Diamond State has paid roughly $700,000 in defense costs to date and is continuing to defend 21 Century in the underlying litigation. [40] ¶ 31; [42] ¶ 8. 21 Century provides no argument as to how Diamond State is actually in breach of its duty to defend under any insurance policy while it is providing a full defense.

For ease of reference, the insurance agreements will be treated as one policy with respect to the duty to defend. With respect to potential indemnification, a determination of which policy is at issue may have consequences in terms of coverage limits or other exclusions, but that determination will be left for a later date.

### B. Waiver

"Waiver arises from an affirmative act, is consensual, and consists of the intentional relinquishment of a known right." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 396 (1993). A waiver can be express or implied. *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 326 (2004). "An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Id.* Where the material facts are not in dispute, and only one reasonable inference can be drawn, waiver is a question of law that may be decided on summary judgment. *Id.* (citation omitted).

21 Century argues that Diamond State waived its right to contest its duty to defend by (1) making an internal determination as of December 16, 2013, that the underlying action was potentially covered; (2) informing 21 Century in letters dated

December 16, 2013, and February 4, 2014, that it agreed to participate in 21 Century's defense; (3) requesting and receiving litigation strategy reports and other privileged information from 21 Century's defense counsel; (4) participating in the August 25, 2014 settlement conference between 21 Century and DR Distributors; and (5) continuing to pay 21 Century's defense costs. Diamond State disputes that it ever determined that the underlying action was potentially covered. And while it is undisputed that Diamond State has been participating in 21 Century's defense, Diamond State emphasizes that, in its letters to 21 Century, it identified the policy exclusions that could preclude coverage, and that it explicitly reserved its rights to file a declaratory judgment action contesting its defense and indemnification obligations and to seek reimbursement of defense costs.

21 Century's position seems to be that once an insurer begins paying for an insured's defense under a reservation of rights, it cannot seek a declaratory judgment unless it receives new information on which to base its decision. But the only authority 21 Century cites are cases where the insurer agreed to provide benefits under an insurance policy without reserving its rights to contest coverage. *See Chaudhry v. Provident Life & Accident Ins. Co.*, No. 12-CV-5838, 2014 WL 3511529, at *20 (N.D. Ill. July 16, 2014); *Ins. Corp. of Ireland, Ltd. v. Bd. of Trustees of S. Illinois Univ.*, 937 F.2d 331, 337 (7th Cir. 1991). 21 Century ignores the fact that Diamond State explicitly reserved its rights to do exactly what it did— file a declaratory judgment to determine its defense and indemnification obligations and seek reimbursement of the money expended while participating in the defense.

Perhaps Diamond State did receive new information, or perhaps they simply finished making their initial determination. It makes no difference, because they never relinquished their reservation of rights. Diamond State reserved its rights and then defended while it sought clarity on whether it owed a duty to defend. Its conduct was entirely consistent with the terms of the policy and does not imply waiver.

## C.     Estoppel

"Most often a claim of estoppel is made when the insurer has failed entirely to provide a defense, has provided a defense without reserving its rights, or has failed to seek a declaration of its rights." *Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 452 (7th Cir. 2000). But even if an insurer defends under a reservation of rights, it can be estopped from contesting coverage upon a showing of prejudice. *Id.*

21 Century argues that Diamond State's letters dated December 16, 2013, and February 4, 2014, led it to believe that Diamond State had made an internal determination that the underlying action was potentially covered by the insurance policy. 21 Century further claims that it relied on that representation in providing privileged information to Diamond State, including a position letter prepared in advance of a settlement conference. It is 21 Century's theory, disputed by Diamond State, that Diamond State initiated this declaratory judgment action solely as a result of receiving that position letter. 21 Century does not allege any other prejudice from Diamond State's actions. The filing of a declaratory judgment action alone does not constitute prejudice, and neither does the forwarding of a letter (or

receipt of a position statement)—21 Century suffered no harm from its belief that Diamond State was on the same page about the duty to defend (indeed, it was given a defense with independent counsel of its choice). 21 Century's claim of estoppel therefore fails.

### D. Duty to Defend

"To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 363 (2006). If the facts alleged are covered or potentially covered by the policy, the insurer is obligated to defend its insured, even if those allegations are groundless, false, or fraudulent. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 155 (2005). The duty to defend is triggered unless it is clear from the face of the underlying complaint that the stated facts do not fall within the policy's coverage. *Lagestee–Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012). And if the underlying complaint alleges several theories of recovery against the insured, the insurer's duty to defend arises even if only one of those theories is within the potential coverage of the policy. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 73 (1991). In performing its analysis, a court must "liberally construe both the terms of an insurance policy and the allegations in the underlying complaint in favor of the insured." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015).

As noted above, the insurance agreements obligate Diamond State to defend any suit seeking damages due to "'personal and advertising injury' to which this insurance applies," but not a suit seeking those damages "to which this insurance does not apply." [36] ¶ 26. "Personal and advertising injury" is defined as injury "arising out of" various offenses, including "oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services." [36] ¶ 27. But the agreements also state an exclusion: "this insurance does not apply to . . . 'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." [36] ¶ 28. 21 Century says the underlying complaint and counterclaim allege claims for disparagement, which is included in the definition of personal and advertising injury to which the insurance applies. Diamond State argues that it has no duty to defend 21 Century in the underlying action because the allegations "arise out of" trademark infringement, and thus allege injury to which the insurance does not apply.[2]

Illinois courts have held that the phrase "arising out of" is both broad and vague and, construed against the insurer, requires "but for" causation. *Am. Econ. Ins. Co. v. DePaul Univ.*, 383 Ill.App.3d 172, 178 (1st Dist. 2008). Accordingly, a claim of relief is excluded only if it would not have arisen but for the excluded conduct. So long as the factual allegations and injury are the same, additional

---

[2] Both parties agree that 21 Century's alleged use of DR Distributors' trademarks in its website metatag falls within the "unauthorized use" exclusion, but that does not end the analysis. It is clear that many of the allegations in the underlying action are unrelated to, and do not arise out of, the content of 21 Century's metatags.

claims providing alternative theories of relief are swallowed by the exclusion, as well. *Nautilus Ins. Co. v. 1452-4*, 562 F.3d 818, 823 (7th Cir. 2009). While not all of the counts alleged in the underlying complaint and counterclaim are expressly labeled trademark infringement, whether the exclusion applies depends not on the claims themselves but on the factual allegations underpinning those claims. *Health Care Indus. v. Momence Meadows Nursing*, 566 F.3d 689, 696 n.9 (7th Cir. 2009). Thus, even if a claim is brought under a non-trademark legal theory, coverage may be precluded by the exclusion if the claim would not have arisen but for the allegations of trademark infringement, or necessarily arose out of those allegations.

In support of its argument that the underlying claims arise out of trademark infringement, Diamond State emphasizes that the bulk of the underlying allegations relate to 21 Century's use of DR Distributors' trademark, that they are listed under the heading "Defendant's Infringing Activities," and that those allegations are incorporated into every count. [28] at 7; [36] ¶¶ 10–20.[3] It is true that most of the claims in the underlying action are expressly founded on allegations of 21 Century's use of DR Distributors' trademark. 21 Century does not contest this. Instead, it focuses on one of four different theories of relief in the complaint and counterclaim presented under the Illinois Deceptive Trade Practices Act: that 21 Century's "actions disparage the goods, services, and business of [DR

---

[3] Diamond State also points to the parties Joint Status Report, filed on May 6, 2014, which states DR Distributors' position that it filed the underlying action after learning that 21 Century had begun selling e-cigarettes under a new name, and 21 Century's position that the primary legal issue in the action was the priority of use of a trademark. But it is the complaint and counterclaim, not the Joint Status Report, that provide the basis for the determination of Diamond State's duty to defend.

Distributors] by making false or misleading factual representations." [1-1] ¶ 113; [1-2] ¶ 113. However, that allegation is simply a legal conclusion that does not "give rise to coverage." *See Hartford Ins. Co. v. Kelly*, 309 Ill.App.3d 800, 806 (1st Dist. 1999). If the alleged disparaging "actions" were that 21 Century was using an infringing trademark on its goods, then the claim would be excluded from coverage. But the claim would be covered if the referenced "actions" describe tortious conduct that is distinct from trademark infringement.

21 Century contends that several allegations of false or misleading statements scattered throughout the complaint could constitute elements of a claim of disparagement separate and apart from trademark infringement. These include an allegation that 21 Century engaged in "unlawful and deceptive conduct by making misrepresentations to [DR Distributors'] customers, by claiming that [21 Century is] selling [DR Distributors'] e-cigarettes, and that [21 Century is] affiliated with [DR Distributors]." [1-1] ¶ 50. The complaint also alleged that a 21 Century representative made an unsolicited phone call to at least one of DR Distributors' longtime customers, explicitly claiming "that he was selling 21ˢᵗ Century Smoke e-cigarettes, and repeatedly stated that he was affiliated with CB Distributors." [1-1] ¶¶ 52–53, 63. The underlying counterclaim contains nearly identical allegations. [1-2] ¶¶ 52, 54–55, 65. Diamond State does not address those specific allegations, but instead says that "there are no allegations of an injury-causing publication of material apart from 21 Century's alleged misuse of the DR trademark." [28] at 10–11. Diamond State says the allegations identified by 21 Century do not support a

disparagement claim but instead a passing off claim, because the false or misleading statements do not denigrate the quality of DR Distributors' goods or services, and because they were part of a scheme to sell 21 Century products by benefitting from the goodwill earned by DR Distributors.

Part of the problem here is that disparagement is not defined by the policy, and whether the allegations can constitute a claim of disparagement is a matter of unsettled law in Illinois. The First District of the Appellate Court of Illinois has held that a disparagement claim under the Illinois Deceptive Trade Practices Act is analyzed the same as a claim of common law commercial disparagement, which requires a false or misleading statement related to the quality of another's goods or services. *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 327 Ill.App.3d 128, 140 (1st Dist. 2001); *Allcare, Inc. v. Bork*, 176 Ill.App.3d 993, 999 (1st Dist. 1988); *Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869, 876 (1st Dist. 1978). But in *Pekin Insurance Co. v. Phelan*, 343 Ill.App.3d 1216 (3d Dist. 2003), the Third District held that to be disparaging, a statement must be 1) false or misleading; 2) about a competitor's goods or services; and 3) made to (or tends to) influence the public not to buy those goods or services. *Id.* at 1220. *Pekin* did not, however, require the statement to be about the quality of the goods or services. *Id.* at 1221; *but see e.g.*, *Greenwich Ins. Co. v. RPS Products, Inc.*, 379 Ill.App.3d 78, 88 (1st Dist. 2008) (citing *Lexmark* to find no disparagement because the false statements did not criticize the quality of a competitor's product.)

The underlying complaint and counterclaim adequately allege the prospect of a *Pekin*-like disparagement claim. In *Pekin*, the underlying complaint alleged that the insured, a hairstylist, told customers that the salon at which she worked was moving to a new location. 343 Ill.App.3d. at 1218. But the salon was not really moving—the hairstylist was merely setting up a competing business and allegedly luring customers away. *Id*. The underlying complaint did not allege that she discussed the quality of the salon's services or denigrated it in any way. But because her alleged statements were misleading, related to the salon's services, and intended to influence the public not to buy those services, the court held that the underlying complaint pleaded disparagement, falling within the scope of the insurance policy's coverage. *Id*. at 1221. Here, because the underlying complaint alleged that 21 Century actively contacted customers of DR Distributors and made false and misleading statements regarding its affiliation with DR Distributors in order to sell those customers its competing products, it is conceivable that DR Distributors pleaded disparagement under the terms of the insurance policy.

The question remains whether this claim of disparagement arose from the alleged trademark infringement or is separate and distinct. Certainly, most of the claims and allegations in the complaint relate to 21 Century's use of a product designation, 21 Century Smoking, which may be confusingly similar to DR Distributors' trademark 21ST CENTURY SMOKE. But misleading customers into thinking it is affiliated with DR Distributors and selling DR Distributors' products is not conduct that is necessarily dependent on trademark infringement. 21 Century

might have attempted to sell to these customers products that did not bear the allegedly infringing trademark. It may be that the court in the underlying action follows the great weight of Illinois authority and holds that DR Distributors does not have a disparagement claim (because the misleading statements are not disparaging of quality). The court might also hold that DR Distributors' injury, if any, was caused solely by trademark infringement. "But the insurer bears the burden of the underlying plaintiffs' broad drafting." *Illinois Tool Works Inc. v. Travelers Cas. & Sur. Co.*, 2015 IL App (1st) 132350, ¶ 21 *appeal denied sub nom. Illinois Tool Works, Inc. v. Travelers Cas. & Sur. Co.*, 32 N.E.3d 673 (Ill. 2015). The allegations are sufficiently vague such that 21 Century's alleged tortious conduct may include something beyond trademark infringement. Given the broadest possible interpretation of the complaint and counterclaim, DR Distributors has a very thin reed on which to rest a disparagement claim that is potentially separate and distinct from its trademark infringement claims. As a result, the underlying complaint falls within the scope of Diamond State's duty to defend 21 Century.[4]

---

[4] The presence of one potential theory of recovery that escapes the trademark infringement exclusion means the duty to defend exists and there is no need to address 21 Century's argument that the complaint and counterclaim also allege a claim for slogan infringement. For the sake of completeness, however, it is worth noting that there is no claim for slogan infringement. 21 Century is alleged to have infringed upon the trademarked brand name 21ST CENTURY SMOKE. [1-1] ¶¶ 28, 40. While a slogan is intended to remind consumers of a brand, a trademarked brand name is not itself a slogan. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 619 (2d Cir. 2001); *see also Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). No matter how liberal a construction the underlying pleadings are afforded, they do not allege the infringement of a slogan. Thus, any trademark infringement claims that are excluded from coverage are not saved by the slogan infringement exception to the exclusion.

The primary case on which Diamond State relies is distinguishable. In *Citizens Insurance Co. of America v. Uncommon, LLC*, 812 F. Supp. 2d 905 (N.D. Ill. 2011), a recent case from this district that analyzed a similar exclusion provision, the court found that claims of trademark infringement, unfair competition, deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, tortious interference with business practices, fraud, and unjust enrichment all arose from trademark infringement and were excluded from coverage. But in that case, the underlying complaint explicitly alleged the insured's use of another's trademark as the sole basis for each cause of relief. *Id.* at 911–912. Here, while much of the complaint and counterclaim is devoted to the use of an allegedly offending trademark, some allegations, while vague, may be distinct.

The other cases cited by Diamond State are similarly distinguishable. For example, in *Native American Arts, Inc. v. Hartford Casualty Insurance Co.*, 435 F.3d 729 (7th Cir. 2006), the insurance policy contained an explicit clause broadening the IP exclusion to clearly encompass the underlying complaint's allegations. In *Parameter Driven Software, Inc. v. Massachusetts Bay Insurance Co.*, 25 F.3d 332 (6th Cir. 1994), the relevant claims of the underlying complaint explicitly referenced and were based on the insured's use of another's trademark. *Id.* at 334, n.3. And in *Marvin J. Perry, Inc. v. Hartford Casualty Insurance Co.*, 412 Fed. Appx. 607 (4th Cir. 2011), the Fourth Circuit found that an otherwise covered unfair competition claim arose from trademark infringement only after noting that the count included six paragraphs discussing an allegedly infringed trademark. *Id.* at 613. In these

cases and others cited by Diamond State, the courts' holdings that non-trademark theories of relief arose from trademark infringement are inapplicable insofar as the supporting allegations in those cases did not leave room for covered claims that are independent of trademark infringement.

21 Century's motion is granted in part, and Diamond State's motion is denied. Because the allegations in the underlying action are potentially covered by the policy, Diamond State does have a duty to defend 21 Century. 21 Century's request for a declaration that Diamond State has a duty to indemnify is denied as premature. As discussed above, there is a chance—albeit a very small one in light of the overwhelming predominance of trademark infringement as the theory of recovery—that 21 Century's potential losses are covered under the policy. But until the underlying action is resolved, one cannot know if 21 Century's activity and any resulting loss actually falls within the policy's coverage. *See United Services Auto. Ass'n v. Dare*, 357 Ill. App. 3d 955, 960 (1st Dist. 2005).[5]

### E.    Sanctions

21 Century requests sanctions against Diamond State under both Rule 11 and Section 155 for its conduct over the course of this litigation. As Diamond State points out, motions for Rule 11 sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."

---

[5] The policy gives the insurance company the right to reimbursement for the defense costs incurred, under certain circumstances. [36] ¶ 29. Such contractual provisions are permissible, as alluded to in *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 164 (2005), and the terms here are unambiguous. But Diamond State's argument for reimbursement is premised on a finding that no duty to defend exists. Since Diamond State has the duty to defend for the reasons discussed above, the request for reimbursement is denied.

Fed. R. Civ. P. 11(c)(2). 21 Century has not presented a separate motion and does not respond to Diamond State's procedural argument. The request for Rule 11 sanctions is denied.

21 Century's request for sanctions under Section 155 is also denied. That statute allows an insured to recover attorney fees when the insurer engages in vexatious and unreasonable conduct during the course of coverage litigation. 215 Ill. Comp. Stat. 5/155. An insurer's conduct is not vexatious and unreasonable if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *TKK USA, Inc. v. Safety Nat. Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013). Courts must consider the totality of the circumstances in determining whether an insurer's conduct deserves Section 155 sanctions. *Id.*

Diamond State's position and arguments in support of non-coverage were legitimate and reasonable. And its conduct in the course of this action has been reasonable, as well. When there is a dispute over the duty to defend, the course of action most beneficial to an insured is for the insurer to pay for the defense under a reservation of rights and seek resolution on the question of its obligations. That is what Diamond State did here. Its conduct has not been so vexatious or unreasonable as to rise to the level of Section 155 sanctions, and there are no

material facts in dispute that bear on the reasonableness of Diamond State's position. 21 Century's request is denied.

## IV. Conclusion

Diamond State's motion for summary judgment, [27], is denied. 21 Century's motion for summary judgment, [34], is granted in part and denied in part. Diamond State has a duty to defend 21 Century in connection with the underlying action. Its duty to indemnify 21 Century will not be determined until the underlying action is resolved. No sanctions will be imposed on Diamond State.

ENTER:

Manish S. Shah
United States District Judge

Date: 3/30/16